IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DIANE CURRY,

    Plaintiff,

vs.                                 Case No. 4:08cv363-SPM/WCS

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Diane Curry, applied for supplemental security income benefits. Plaintiff was 52 years old at the time of the administrative hearing (on March 13, 2007), has a 9th grade education, and has past relevant work as a hotel maid. Plaintiff alleges disability due to chronic obstructive pulmonary disease, asthma, and depression.

The Administrative Law Judge found that Plaintiff has the residual functional capacity to perform unskilled or low end semiskilled light work with restrictions to avoid smoke, dust, fumes, unprotected heights, and dangerous machinery. He then found that Plaintiff could perform work as a child care attendant, personal care attendant, parking lot attendant, dishwasher, and order clerk, and thus was not disabled.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed

all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Medical evidence and evidence from the administrative hearing**[1]

On June 26, 2003, Plaintiff was examined by F. Ray Dolly, M.D. R. 263. Her height was reported to be 64 inches. *Id.* Before administration of asthma medication, her spirometry test showed an FVC score of 2.11 and an $FEV_1$ score of 1.30. *Id.* After medication was administered, her FVC score was 2.15 and her $FEV_1$ score decreased slightly to 1.26. *Id.*

On June 9, 2004, Plaintiff was examined again by Dr. Dolly for pulmonary testing. R. 260. Dr. Dolly noted that Plaintiff did not routinely stay on her medications except for

---

[1] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE, as available to the court on Westlaw, or PDRhealth™, PHYSICIANS DESKTOP REFERENCE, found at http://www.pdrhealth.com/drugs/drugs-index.aspx. Information about medical terms and prescription drugs come from DORLAND'S MEDICAL DICTIONARY FOR HEALTH CONSUMERS, available at:  http://www.mercksource.com (Medical Dictionary link).  Social Security Rulings can be found at: http://www.ssa.gov/OP_Home/rulings/rulfind1.html.

albuterol.  *Id*.  He said she had been hospitalized for acute exacerbation of her broncho spasm and "does well when she is on all of her therapy in the hospital.  When she gets home and stops her medications she once again worsens.  Patient unfortunately also smokes cigarettes."  *Id*.  He said she had smoked for many years.  *Id*.  Dr. Dolly said:

> Patient unfortunately has been poorly compliant in the past.  I have instructed her the importance of discontinuing smoking complete and being compliant with her medications.  She understands that if she is not compliant and continues to smoke she will probably not live much longer.  She seems to understand this . . . .

R. 261.  Her pre-medication FVC readings were between 1.00 and 1.25 and her readings after medication were 1.48 to 1.57.  R. 262.  Plaintiff's $FEV_1$ readings before medication were between 0.52 and 0.56, and after medication the readings were 0.77 and 0.81.[2]  *Id*.  Plaintiff's height was reported to be 62 inches tall.  *Id*.

On August 20, 2004, Plaintiff reported to Dr. Dolly that she had stopped smoking and was using Advair on a regular basis.  R. 259.  She said that Advair and Singulair had helped her "a great deal."  *Id*.  She said she was trying to do better at taking her medications.  *Id*.  Dr. Dolly's assessment was "chronic asthma, currently doing well."  *Id*.

On June 8, 2005, Plaintiff was examined by Carla M. Holloman, D.O., for a consultative examination.  R. 210.  Dr. Holloman noted that Plaintiff "remains a poor historian in that she is not able to relay how regularly she suffers asthma attacks."  *Id*.  She told Dr. Holloman that she had stopped smoking since her last visit, and had done some hotel housekeeping in the interim.  *Id*.

---

[2] The labels for these readings did not copy well, and the first letter of the reading is cut off.  R. 262.  The readings noted above are from the first two pre-medication scores, the ones Plaintiff relies upon in her memorandum.  Doc. 15, p. 3.

On June 24, 2005, Plaintiff was seen by May Tay, Ph.D., for a psychological evaluation. R. 216. During the evaluation, Dr. Tay observed that Plaintiff was motivated to appear as disturbed or impaired. R. 217. Plaintiff told Dr. Tay that she had heard voices, but was vague about it. *Id.* On one test, "her performance or lack of cooperation rendered a score impossible." *Id.* She wrote Lotto numbers in response to one part of the test, and then drew a tic-tac-toe diagram, apparently not responsive to those portions of the test. *Id.* She actively displayed an inability to do simple math problems until she was told that it was important that she show that she could manage her own money, and then she displayed the math ability. *Id.* She seemed to pretend to be disoriented as to date, month, season, and place. *Id.* Dr. Tay's diagnosis was malingering, finding that because Plaintiff did not put forth a sincere effort, it was impossible to render an accurate assessment of her current mental status. R. 218.

On November 4, 2005, Plaintiff was seen again by Dr. Holloman. R. 291. She complained of fatigue and a cough, was noted to have mild wheezing, and the diagnosis was asthma. *Id.* On December 2, 2005, she had mild wheezing. R. 289. On March 16, 2006, her asthma was well controlled. R. 288.

On October 3, 2006, Plaintiff was admitted into the hospital emergency room with severe chronic asthma. R. 256. The impression was severe chronic asthma, fixed obstructive lung disease and chronic obstructive pulmonary disease secondary to asthma, and a history of smoking (discontinued over a year earlier). *Id.* She had been admitted due to an increased cough, congestion, and wheezing, despite the use of her prescribed medications. *Id.* She was in mild distress, with decreased breath sounds bilaterally, prolonged expiratory phase of respiration, expiratory rhonchi, and wheezing.

R. 257. Dr. Dolly wrote: "we have a patient with severe obstructive lung disease." R. 258. She had "good air movement" on discharge on October 5, 2006, but required oxygen by nasal cannula to keep her saturation at about 92%. R. 307.

On January 24, 2007, Plaintiff was again admitted to the hospital for breathing problems. R. 293-294. She said that she had not ben taking her asthma medications for the past several months because she had lost her insurance. R. 294. After treatment with steroids, nebulizers, oxygen, and antibiotics, she slowly improved, was "near baseline," and was discharged on January 29. 2007. *Id.*

Plaintiff testified at the administrative hearing on March 13, 2007, that when she suffers an asthma attack, she gets panicky, short of breath, and sometimes passes out. R. 401. She said that the attacks happen a lot. *Id.* She said that she could not do any house cleaning in her home. *Id.* She could hardly go outside any more, she said. R. 403. She said that the dust, smoke, and pollen cause her to start wheezing. R. 411. Plaintiff testified that she had stopped smoking about a year and one-half earlier, and gave away her three cats. R. 410-411. She said that she was given only a free three day supply of medication, that she ran out, and that she did not have the money to buy more. T. 403-404. She said she went to the emergency room to get medication when she ran out. R. 405. Plaintiff said that she used to be able to clean 14 to 21 hotel rooms a day, but cannot do that any more. R. 408. She said she is unable to sit, walk, or stand for any appreciable period of time. R. 408-410.

On April 13, 2007, Plaintiff returned to the emergency room with shortness of breath and wheezing for the prior 36 hours. R. 325, 329, 330. She was wheezing when she tried to speak with the treating physician, Dr. Mevid, but was in no apparent

distress.  R. 326.  It was thought that she was having "an asthma exacerbation," and Dr. Mevid was "not entirely sure how compliant she is with her medication."  R. 327.  She said, however, that she was using Advair and the Albuterol inhaler at home, but this was not keeping her symptoms under control.  R. 325.

On April 18, 2007, Plaintiff was evaluated on a consultative basis by Wayne Sampson, M.D.  R. 266.  She reported she no longer smoked cigarettes.  *Id.*  Dr. Sampson's impression was chronic obstructive pulmonary disease, asthma, and depression.  R. 267.  He conducted spirometric pulmonary function tests.  R. 271.  He recorded Plaintiff's height at 65 inches.  R. 267, 271.  The results of the test for FVC were from 2.04 to 2.10 before medication, and FVC 2.50 to 2.58 after medication.  *Id.*  The results for $FEV_1$ before medication were 1.13 to 1.20 and 1.41 to 1.49 after medication.  *Id.*

On May 16, 2007, Plaintiff was admitted to the emergency room with respiratory distress.  R. 360.  Her relatives said she had not been using her medications recently.  *Id.*  On May 20, 2007, when Plaintiff was extubated, she was mildly confused and not orientated to person, place, or time.  R. 361.  She was discharged on May 26, 2007, and her memory seemed to be improving.  *Id.*  She went home, though transfer to a short term rehabilitation facility was discussed.  *Id.*  Plaintiff was strongly advised to take her medications.  *Id.*

On July 5, 2007, Plaintiff was again admitted to the emergency room with shortness of breath and wheezing.  R. 345.  Her usual medications had not helped.  *Id.*  She was on a ventilator until discharged on July 10, 2007.  *Id.*

**Legal analysis**

**Whether the ALJ erred at step 3 in finding that Plaintiff's pulmonary impairments do not meet or equal a Listed impairment**

Plaintiff contends that the Administrative Law Judge should have found that her severe pulmonary impairments met or equaled Listing 3.02 (chronic pulmonary insufficiency) or Listing 3.03A (asthma). Doc. 15, p. 10.

The Commissioner's rules provide that if the claimant has an impairment that is listed in or equal to an impairment listed in Appendix 1, Subpart P, following 20 C.F.R. § 1599, then a finding of disability will be made at Step 3 without considering the claimant's age, education, and work experience. 20 C.F.R. § 1520(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' " Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990) (emphasis by the Court). A claimant is entitled to benefits if it is shown that his or her limitations meet, or are medically or functionally equal to, the limitations set forth in the Listing. Shinn ex rel. Shin v. Commissioner, 319 F.3d 1276, 1282 (11th Cir. 2004).

The claimant has the burden of proving that his impairments meet or equal a listed impairment by presentation of specific evidence of medical signs, symptoms, or laboratory test results meeting all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. at 530, 110 S.Ct. at 891. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests

only some of those criteria, no matter how severely, does not qualify." *Id.* (emphasis by the Court).

> In order to equal a listing, the medical findings must be at least equal in severity and duration to the listed findings. If a claimant has more than one impairment and none of his impairments meet or equal a listed impairment, the Secretary reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination of impairments is medically equal to any listed impairment. 20 C.F.R. 416.926(a). When deciding medical equivalence, the Secretary must consider the medical opinion of one or more designated physicians on an advisory basis. *Id.*, at § 416.926(b). When a claimant contends that he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment, or, if in the alternative, he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir.1986) (Appendix A).

Wilkinson on behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). Even though a claimant's own description of his or her symptoms is not medical evidence, a description of symptoms is relevant evidence to a determination of whether a claimant's impairment meets or equals a listed impairment and should be considered along with evidence from medical sources. Shinn ex rel. Shin v. Commissioner, 319 F.3d at 1285 (finding the statement above from Wilkinson on behalf of Wilkinson, requiring "specific medical findings," to be *dicta*).

Listing 3.02A provides: "Chronic obstructive pulmonary disease, due to any cause, with the $FEV_1$ equal to or less than" 1.15 for a person between 61 and 63 inches tall, and 1.25 for a person between 64 and 65 inches tall. Listing 3.02B provides: "Chronic restrictive ventilatory disease, due to any cause, with the FVC equal to or less than" 1.35 for a person between 61 and 63 inches tall, and 1.45 for a person between

64 and 65 inches tall.  Listing 3.03A (asthma) provides that "chronic asthmatic bronchitis" is to be evaluated "under the criteria for chronic obstructive pulmonary disease in 3.02A."

On June 26, 2003, Plaintiff's pre-medication FVC score was 2.11 and her $FEV_1$ score was 1.30, and her height was measured at 64 inches.  R. 263.  After medication, the $FEV_1$ score decreased slightly, to 1.26, while the FVC score increased slightly to 2.15.  *Id.*  These scores did not satisfy the Listings described above for a person of that height.

On June 9, 2004, Plaintiff's pre-medication FVC readings were between 1.00 and 1.25 and after medication were 1.48 to 1.57.  R. 262.  Plaintiff's $FEV_1$ readings before medication ranged between 0.52 and 0.56, and after medication the readings were from 0.77 to 0.81.[3]  *Id.*  Plaintiff's height was reported to be 62 inches tall.  *Id.*  These readings apparently satisfied Listing 3.02A and 3.03A, assuming that Plaintiff was actually 62 inches tall.

On April 18, 2007, Plaintiff's FVC scores ranged from 2.04 to 2.10 before medication, to 2.50 to 2.58 after medication.  R. 271.  The results for $FEV_1$ before medication were 1.13 to 1.20 and 1.41 to 1.49 after medication.  *Id.*  For these readings, however, Plaintiff's height was reported to be 65 inches.  *Id.*  These readings did not satisfy the Listings.

---

[3] The labels for these readings did not copy well, and the first letter of the reading is cut off.  R. 262.  The readings noted above are from the first two pre-medication scores, the ones Plaintiff relies upon in her memorandum.  Doc. 15, p. 3.

The ALJ considered whether Plaintiff's asthma met or equaled a Listed impairment, but did not identify which Listing was under consideration. R. 17. He found that Plaintiff was successfully treated with prescription medication for asthma, but that "she has had poor compliance with medical regimen." *Id.* He noted that Plaintiff must be aware of environmental factors that trigger her asthma, and found that her condition "does not limit her ability to perform substantially gainful activity." *Id.* He found, however, that her residual functional capacity was limited by her need to avoid asthma triggers, such as smoke, dust, or fumes. R. 18.

Plaintiff arguably met Listing 3.02A and B based on the results of the June 9, 2004, test. But as Defendant points out, she was still smoking cigarettes at that time. R. 260. The scores from the April 18, 2007, test, several years after she quit smoking, were higher and did not satisfy the Listing, whether Plaintiff is 62 inches tall or 65 inches tall. But as Defendant points out, Listing 3.00 provides that "[t]he dose and name of the bronchodilator administered should be specified," and the "manufacturer and model number of the device used to measure and record the spirogram should be stated." This information is not contained on the June 9, 2004, test. R. 262. The dose and name of the bronchodilator was recorded for the June 26, 2003, test (R. 263) and on the April 18, 2007, test (R. 271), and the device used was specified on the April 18, 2007, test. R. 272.

Listing 3.00 also provides that "[a] statement should be made in the pulmonary function test report of the individual's ability to understand directions as well as his or her effort and cooperation in performing the pulmonary function tests." The April 18, 2007, test reported that Plaintiff expended maximal effort during the testing, and was

cooperative. R. 271. The June 26, 2003, test reported that Plaintiff used best efforts. R. 263. The June 9, 2004, test did not report whether Plaintiff was cooperative and used best efforts on the test. R. 262. This was important, given Dr. Tay's June 25, 2005, finding that Plaintiff did not use best efforts during her mental status examination, made obvious attempts to appear less capable than she was, and conclusion that she was malingering. R. 216-218.

Plaintiff argues that the ALJ failed to consider whether her condition equals a Listed impairment, but she fails to show how the evidence that would support such a finding. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. at 530, 110 S.Ct. at 891 (emphasis by the Court).

In summary, the burden of proof is upon Plaintiff at step 3 to prove that her condition meets or equals all of the criteria of a Listing. The spirometry testing in 2007, after Plaintiff had stopped smoking, was closer to the date of the ALJ's decision, and contained all of the information specified by the Listing, indicating that Plaintiff had used her best efforts. Plaintiff has not shown that she met her burden of proof at step 3. Consequently, the court should reject this first argument.

**Whether the ALJ properly determined Plaintiff's credibility**

Plaintiff argues that the ALJ improperly found her testimony to be not fully credible. Plaintiff contends that the ALJ should have relied more heavily on the evidence supporting a finding of disability under the respiratory Listings and Plaintiff's explanation for failing to comply with her prescribed medications. Doc. 15, p. 13. Plaintiff also argues that the ALJ improperly relied upon evidence of her daily activities, that she was a single parent, had a driver's license, was able to care for herself, and got along with her children. *Id*.

Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity. Social Security Ruling 96-8p, p. 4. Pain and other symptoms may affect either exertional or non-exertional capacity, or both. *Id*., p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991). It is not necessary that the ALJ expressly identify this circuit's pain

standard if his findings "leave no doubt as to the appropriate result" under the law. Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

The ALJ determined that Plaintiff's medically determined impairments could reasonably be expected to produce the symptoms of record, but that Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms was not entirely credible. R. 20. He reasoned that Dr. Holloman had found, on June 8, 2005, that Plaintiff was a poor historian as to the frequency of her asthma attacks. R. 19. He noted that Dr. Tay had "diagnosed the claimant to be malingering," and found that she "did not put forth a sincere effort." Id. He noted that an agency physician, who only reviewed the medical records, determined that Plaintiff should have the residual functional capacity to perform medium work. Id. He noted that the record of Plaintiff's hospital admission, on April 13, 2007, found that the exacerbation of her asthma was "possibly related to noncompliance [with medications] and a history of tobacco use." Id. Finally, the ALJ determined that Plaintiff's testimony, that she could not perform "even the slightest basic work activity," was contradicted by her daily activities, which included that she is a single parent, has a driver's license, is able to wash dishes at home, cares for herself, and gets along well with her children. Id.

Enough of these findings are supported by substantial evidence in the record to require that this court affirm the decision. Dr. Holloman saw Plaintiff in 2003 and in 2005. In 2003, she said that Plaintiff "is an extremely poor historian," meaning an unreliable person from which to gather information about the frequency and severity of her asthma attacks. R. 152. Dr. Holloman said this again in 2005, finding that she (Dr. Holloman) could not trust what Plaintiff said about the frequency of her asthma attacks.

R. 210.  This is rather strongly supported by Dr. Tay's observations and ultimate findings, that Plaintiff did not put forth a sincere effort, and was malingering and play-acting during her testing.  Most telling was that Plaintiff initially could not do simple math, but when told she had to show that she could manage her money, she displayed ability to do math.  These findings are sufficient, standing alone, to support the ALJ's credibility finding.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and were based upon substantial evidence in the record.  The decision of the Commissioner to deny Plaintiff's application for benefits should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 1, 2009.


s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:08cv363-SPM/WCS